IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REAL PROPERTY MANAGEMENT SPV LLC d/b/a REAL PROPERTY MANAGEMENT, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AARON TRUITT,<br><br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION<br><br>Case No. 2:24-cv-00184-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff's Motion for Preliminary Injunction [ECF No. 35]. On July 18, 2024, the court held a hearing on the motion. At the hearing, Lauren W. Linderman, C. Michael Judd, and Leah Chrisbacher represented Plaintiff, and Bruce Jonathan Nappell and Brennan H. Moss represented Defendant. The court took the matter under advisement. Now being fully informed, the court issues the following Memorandum and Decision.

BACKGROUND

Plaintiff is a Delaware limited liability company headquartered in Texas which offers franchises for businesses providing property management services under the "Real Property Management" brand. Since 2017, Defendant Aaron Truitt has operated as an RPM franchisee, providing property management services using Plaintiff's trademarks, trade names, innovative

1

marketing and management systems, and other proprietary business methods. Defendant is a California resident and operates his franchise in Livermore, California.

Before operating his franchise, Defendant and Plaintiff entered into a Franchise Agreement. At the time of this Agreement, Plaintiff was a Utah company located in Salt Lake City. As a franchisee, Defendant had access to Plaintiff's valuable and proprietary resources, databases, programs, and materials. In exchange for the benefits and use of Plaintiff's goodwill, brand-recognition, and System, franchisees agree to protect the RPM System. This includes the signing of the Franchise Agreement, which includes an in-term non-compete clause in which franchisees promise to refrain from competing during the term of their relationship with Plaintiff. On March 23, 2017, Defendant signed the Franchise Agreement with Plaintiff for a term of ten years. The term of the Franchise Agreement is set to expire by its own terms on March 23, 2027.

On April 12, 2023, Defendant contacted Plaintiff by email to notify it that he was purportedly terminating the Franchise Agreement to pursue his own business endeavors. On or about April 21, 2023, Plaintiff's representatives Jeff Pepperney and Tim Sedgwick had a call with Defendant regarding his email. During that call, Plaintiff's representatives advised Defendant that he did not have the right to unilaterally terminate the Franchise Agreement and that it would be a breach to operate a competitive business during the term of the Franchise Agreement. On October 12, 2023, Defendant sent Plaintiff another letter declaring that he was "no longer operating as a Real Property Management franchisee," and that he had been operating his own property management company since September 1, 2023—six weeks earlier.

Upon receipt of this letter, Plaintiff determined that Defendant was indeed operating a competing business. Plaintiff therefore issued a Notice of Default on December 29, 2023, notifying Defendant that he is in breach of Section 6.3, 11, and 14 of the Franchise Agreement.

(Ex. K) True Rent, Defendant's new business, provides the same property management services in the same California territory that Defendant's RPM franchise services—Alameda County. Furthermore, True Rent's website claims that it is a continuation of Defendant's RPM franchise, and even states that it "was started under the banner of a leading national property management franchise in 2017 and rebranded in 2023 as an independent local company." (Pepperney Decl. ¶ 51) Defendant also continues to use his RPM business cards to solicit customers and advertise, and he even refers to his business as "TRPM." Defendant's Better Business Bureau webpage incorrectly claims that True Rent has been in business for six years, which encompasses the years Defendant was an RPM franchisee. His webpage also contains testimonials from former RPM customers. Further, Plaintiff's records indicate that Defendant and his employees have continued access to Plaintiff's AppFolio system, which includes Plaintiff's point of sale, tenant information, investor information, and financial processing systems, as recently as March 1, 2024.

As a result of this, Plaintiff's filed this motion [ECF No. 10] asking for injunctive relief to enjoin Defendant from performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Plaintiff's marks or franchise system during the term of the Franchise Agreement and take the following corrective actions:

      a. Cease directing voicemail messages to Truitt's RPM franchise to Truitt Enterprises d/b/a True Rent Property Management or TRPM or any other Competitive Business;

      b. Disable all websites, social media pages, and other internet listings that reference Truitt Enterprises d/b/a True Rent Property Management or TRPM; and

c. Remove all references to Truitt Enterprises d/b/a True Rent Property Management or TRPM from the Better Business Bureau® website.

d. Enjoin Defendant from using RPM's Trade Secrets and Confidential Information, as defined in the Franchise Agreement, in connection with any Competitive Business, including Truitt Enterprises d/b/a True Rent Property Management or TRPM.

e. Pursuant to Federal Rule of Civil Procedure 65(d), bind Defendant Truitt's agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this injunction.

f. Not require Plaintiff RPM to post a bond.

## STANDARD OF REVIEW

Preliminary injunctive relief is proper when the moving party shows: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction; if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

## DISCUSSION

Before addressing the preliminary injunction, the court first must determine which law applies. The law makes clear that Utah law applies. When parties adopt a "choice-of-law clause [electing Utah Law], there can be no question that Utah law controls the disposition of th[e] case." *Federated Capital Corp. v. Libby*, 384 P.3d 221, 230 (Utah 2016). If the parties' contract contains a valid choice-of-law provision, that provision governs. *See, e.g., Brigham Young Univ. v. Pfizer, Inc.,* 2012 WL 918744, at *1 (D. Utah Mar. 16, 2012). Here, the parties entered into a

4

valid choice-of-law provision. They agreed in the Franchise Agreement that the "Agreement shall be governed and construed in accordance with the laws of the State of Utah (without reference to its conflict of laws principles.)" Dkt. 11-2 § 22.1. Additionally, applying Utah law does not violate any California public policy. As Defendant concedes, California courts enforce in-term non-compete agreements. *Quidel Corp. v. Superior Court*, 57 Cal. App. 5th 155, 169–70 (2020). Thus, Utah law applies.

As to the issue of preliminary injunction, Plaintiff has met its burden for a preliminary injunctive relief. Preliminary injunctive relief is proper when the moving party shows: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction; if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Each of these factors weighs in favor of Plaintiff, and they are discussed in turn.

    I.    Plaintiff Has Shown a Substantial Likelihood of Success on the Merits.

Restrictive covenants are valid and enforceable under Utah law if the party seeking relief demonstrates, "(1) the agreement is supported by consideration. (2) there was no bad faith in contract negotiations, (3) the agreement is necessary to protect the goodwill of the business, and (4) it is reasonable in its restrictions in terms of time and geographic area." *Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, LLC*, 636 F. Supp. 2d 1237, 1245–46 (D. Utah 2009). Here, the Franchise Agreement contains valid and enforceable in-term non-compete covenants that are reasonable in their time and geographic restrictions by prohibiting Defendant from operating a Competitive Business within his assigned territory during the term of the Franchise Agreement.

    A.    The In-Term Non-Compete Covenants Are Supported by Adequate Consideration and Were Entered into in Good Faith.

Under the Franchise Agreement, Defendant received access to, and made use of, Defendant's proven business system, as well as certain rights to use Defendant's trademarks, goodwill, brand, and other RPM intellectual property. In exchange, Defendant agreed, among other things, to refrain from competing during the term of the Franchise Agreement. Defendant's access to and use of all of Plaintiff's benefits over nearly a decade is adequate consideration for his promise not to compete with Plaintiff during the term of the Franchise Agreement. *Athlete's Foot Mktg. Assocs. V. Zell Inv., Inc.*, No. Civ.A. 00– 186, 2000 WL 426186, at *10 (W.D. Pa. Feb. 17, 2000).

>   B.  The In-Term Covenants are Necessary to Protect the Goodwill of RPM and RPM Franchisees

"Noncompete provisions in general have been found necessary to protect franchisors' goodwill." *Prop. Mgmt. Bus. Sols. V. Averitte*, No. 2:18-cv-552, 2018 WL 4327922, at *5 (D. Utah Sept. 10, 2018). And the protection of a franchise's goodwill is an interest that justifies injunctive relief, particularly because there is a "connection between [a franchisor's] ability to stop a former franchisee from competing and [the franchisor's] goodwill." *Bad Ass Coffee*, 636 F. Supp. 2d at 1246. For example, in *Bass Ass Coffee*, the court found a former franchisee's competitive conduct was likely to "send negative messages" about the franchisor to the market and to other franchisees, and signal to other franchisees they could "immediately start competing if they are unhappy with [the franchisor]." *Id*. The same is true here. Plaintiff has spent decades investing in, and developing, its goodwill, including its customer brand recognition, reputation, customer base, and customer relationships. Plaintiff licenses its goodwill to its franchisees, for so long as they use its goodwill to operate their RPM franchise business. To protect the value and strength of its goodwill, RPM must ensure that its franchisees agree not to compete with RPM

during the term of their franchise agreements. This ensures that the public and RPM's customer base do not identify a franchisee's competing business with the RPM brand.

      C.  The In-Term Non-Compete Restrictions are Reasonable.

Courts regularly find in-term covenants not to compete in franchise agreements to be reasonable because they are "temporarily limited by [their] very terms" and "relevant and applicable only during the term of the franchise agreement." *Keating*, 2001 WL 407017, at *13. Here, the in-term covenants are reasonably necessary to protect Plaintiff's legitimate business interests, including its goodwill in the marketplace and relationships with clients in Defendant's designated service territory. They are also reasonable under Utah law because their scope is limited to the current RPM customer base of the RPM System and restrains Defendant for no more time than it necessary to protect Plaintiff's goodwill. *See First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, No. 2:15-CV-00229-DN, 2016 WL 6902473, at *16 (D. Utah Nov. 23, 2016). "[A]s long as [franchisees] seek to avail themselves of the beneficial provisions of their franchise contract, they should not be permitted to disregard or refuse to abide by the several obligations they assumed." *McDonald's Sys.*, 195 N.E.2d at 31.

      II.    Plaintiff Faces Real, Concrete, and Ongoing Irreparable Harm.

Plaintiff has clearly established that if the court does not enforce the non-compete provision against Defendant, the resulting domino effect could jeopardize not just the entire RPM franchise system, but the franchise system more broadly. Moreover, "the majority of courts that have considered the question have concluded that franchising companies suffer irreparable harm when their franchisees [] are allowed to ignore reasonable covenants not to compete. " *Bad Ass Coffee*, 636 F. Supp. 2d at 1249. The Tenth Circuit recognizes that non-compete agreements

protect a franchisor's goodwill and intangible assets, such as customer loyalty and brand recognition. *Id*.

      III.      The Ongoing Harm to Plaintiff Outweighs Any Self-Inflicted Harm to Defendant.

Defendant's argument mischaracterizes the remedy Plaintiff seeks. Plaintiff is not seeking to terminate the Franchise Agreement and enforce the post-termination non-compete provisions. Rather, Plaintiff's Motion seeks only to hold Defendant to the in-term non-compete obligation. In other words, Plaintiff seeks injunctive relief that would allow Defendant to continue operating a property management business as an RPM franchise.

Furthermore, any harm Defendant claims he will suffer is self-inflicted. "[W]hen a party knowingly takes actions that increase the potential for harm if an injunction is ordered against them, courts give those harms little weight in the balancing test." *Id*. at 1261. The Tenth Circuit also looks to whether a defendant's harm is "self-inflicted" in balancing the parties' harms. *See, e.g., Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002).

      IV.      The Public Interest Favors Upholding Contractual Obligations.

Defendant's argument that an injunction would be adverse to the public interest is premised entirely on his flawed attempt to gain the protections of California Business & Professions Code section 16600, which are not applicable here. Both California and Utah law support issuance of an injunction in this context. *See, e.g., Flip Flop Shops*, 2016 WL 9275403, at *9; *Averitte*, 2018 WL 4327922, at *8.

## CONCLUSION

For the reasons discussed, the court GRANTS Plaintiff's Motion for Preliminary Injunction.  Accordingly, Defendant is enjoined from performing, directly or indirectly, any

other act injurious or prejudicial to the goodwill associated with Plaintiff's marks or franchise system during the term of the Franchise Agreement and take the following corrective actions:

    a. Cease directing voicemail messages to Truitt's RPM franchise to Truitt Enterprises d/b/a True Rent Property Management or TRPM or any other Competitive Business;

b. Disable all websites, social media pages, and other internet listings that reference Truitt Enterprises d/b/a True Rent Property Management or TRPM; and

c. Remove all references to Truitt Enterprises d/b/a True Rent Property Management or TRPM from the Better Business Bureau® website.

d. Cease using RPM's Trade Secrets and Confidential Information, as defined in the Franchise Agreement, in connection with any Competitive Business, including Truitt Enterprises d/b/a True Rent Property Management or TRPM.

e. Pursuant to Federal Rule of Civil Procedure 65(d), Defendant Truitt's agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this injunction are also bound to these actions and requirements.

f. Plaintiff RPM is not required to post a bond.

DATED this 29th day of July 2024.

BY THE COURT:

DALE A. KIMBALL
United States District Judge